UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------------X

IRINA FIBBIO, individually and on behalf of others
similarly situated,

                                Plaintiffs,

        -against-

JPMORGAN CHASE & CO. and EARLY WARNING
SERVICES, LLC, d/b/a ZELLE,

                                Defendants.

-------------------------------------------------------------------X

Docket No. 23 Civ. 4239

**CLASS ACTION
COMPLAINT**

*Jury trial demanded*

Plaintiff IRINA FIBBIO ("Plaintiff"), individually and on behalf of all others similarly situated (the "Class" or "Class members"), bring this Class Action Complaint against Defendants JPMORGAN CHASE & CO. and EARLY WARNING SERVICES, LLC, d/b/a ZELLE (hereinafter "defendant" or defendants"), based upon her individual experiences and personal information, and investigation by her counsel.

## <u>INTRODUCTION</u>

1.    Plaintiff, individually and on behalf of all others similarly situated, brings this class action suit against Defendants because of Defendants failure to properly manage their online banking and money transfer systems and to safeguard the funds on deposit at JPMorgan Chase & Co. of over one million current Chase account holders, located in the State of New York and various other States.

2.    Defendant JPMorgan Chase & Co. (hereinafter "Chase") is an American multinational financial services company headquartered in New York City and incorporated in Delaware. It is the largest bank in the United States and the world's largest bank by market capitalization.

3.      Defendant Early Warning Services, LLC, d/b/a Zelle (hereinafter "Zelle") is a financial technology company owned by seven major U.S. banks: Bank of America Corp., Capital One Financial Corp., JPMorgan Chase & Co., PNC Financial Services Group, Truist Financial Corp., U.S. Bancorp, and Wells Fargo & Co. It maintains headquarters in Scottsdale, Arizona. Among its services, pertinent to this action, is its ownership, operation and control of Zelle, a money transfer application that allows person to person money transfers from the remitter's bank account to the recipient's bank account.

4.      On or about June 2, 2023, numerous customers using Chase online banking services noticed that online payments were being debited from their accounts twice, including payments made via Zelle. Duplicate transactions and fees were being posted to these customers' checking accounts. This caused thousands of accounts to go into overdraft draft status or negative balance. Checks written from these overdrawn accounts bounced. Credit scores were impacted. Plaintiff and Class Members lost interest and use of their monies.

5.      After, in some cases, spending more than an hour to be telephonically connected to Chase customer service, Plaintiff and the Class were informed that these errors were due to a "glitch" and that Chase was working to reverse the duplicate transactions and reverse any related fees. However, it took approximately two days for these corrections to be made and the damage was done.

6.      At all relevant times, Defendants promised and agreed in various documents to safeguard and protect the customers funds, and assured them, through advertising, websites and other means, that their online banking services and money transfer application were safe and secure. Defendants promised that they were in compliance with applicable federal, state, and local laws, and industry standards.

7.     Contrary to these promises, and despite the fact that Chase and Zelle had been named as defendants in a fraud and false advertising action in 2022, and despite a prior glitch involving Zelle earlier in 2023, Defendants failed to take reasonable steps to prevent the within occurrence, which was a direct result of Defendants' failure to implement adequate and reasonable cyber procedures and protocols to prevent the registering of duplicate transactions.

8.     As a result of Defendants' failure to institute said measures, Plaintiff and Class Members have suffered the loss of funds; loss of use of their funds; loss of interest on monies wrongfully taken, duplicate transaction fees; overdrafts; overdraft fees; increased interest payments; inability to pay ongoing expenses; bounced checks, adverse impact to credit scores; inability to obtain various loans, such as automobile and mortgage, and the time, stress and anxiety associated with unauthorized withdrawals from their accounts.

9.     Accordingly, Plaintiff and Class Members seek to recover damages and other relief resulting from this incident, including but not limited to, compensatory damages, reimbursement of costs that Plaintiff and others similarly situated incurred and/or will be forced to bear, and declaratory judgment and injunctive relief to mitigate future harms that are certain to occur in light of the scope of this incident.

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction pursuant to the Class Action Fairness Act of 2005, 28 U.S.C. § 1332(d), because the aggregate amount in controversy exceeds $5 million, exclusive of interest and costs; the number of members of the proposed Class exceeds 100, and diversity exists because Plaintiff and Defendants are citizens of different states. Subject matter jurisdiction is also based upon the Electronic Funds Transfer Act (EFTA). This Court also has supplemental jurisdiction over the state law claims pursuant to 28 U.S.C. § 1367.

11.    This Court has personal jurisdiction over Defendants as they conduct substantial business in this State and in this District and/or the conduct complained of occurred in and/or emanated from this State and District because the accounts in question were likely stored and/or maintained in accordance with practices emanating from this District.

12.    Venue is proper pursuant to 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the conduct alleged in this Complaint occurred in, were directed to, and/or emanated from this District, and because Plaintiff is a resident of this District.

## THE PARTIES

15.    Plaintiff Irina Fibbio is an individual Chase account holder who resides in Kings County, City and State of New York.

16.    Defendant Chase is a financial services company, a general business corporation existing by virtue of the laws of the State of Delaware, headquartered in New York City, authorized to conduct business in the State of New York and elsewhere, which conducts business within the State of New York and elsewhere and within this District.

17.    Defendant Early Warning Services, LLC, d/b/a Zelle is a financial technology company owned by seven major U.S. banks, including Defendant JPMorgan Chase & Co. It maintains headquarters in Scottsdale, Arizona, and is authorized to conduct business in the State of New York and elsewhere, which conducts business within the State of New York and elsewhere and within this District.

## FACTUAL ALLEGATIONS

18.    At all pertinent times, Plaintiff and Class Members were individual account holders at Defendant Chase, who executed a deposit agreement with Chase and a services agreement with Zelle.

19.     On or about June 1, 2023, Plaintiff and Class Members became aware that online payments were being debited to their accounts twice, including payments made via Zelle. Duplicate transactions and fees were being posted to these customers' checking accounts.

20.     After in some cases spending more than an hour to be telephonically connected to Chase customer service, the customers were informed that these errors were due to a "glitch" and that Chase was working to reverse the duplicate transactions and reverse any related fees. However, it took approximately two (2) days for these corrections to be made.

21.      At all relevant times, Defendant promised and agreed in various documents, including electronic fund transfer agreements, to safeguard and protect the customers funds, and assured them, through advertising, websites and other means, that their online banking services and money transfer application were safe and secure. Defendants promised that they were in compliance with applicable federal, state, and local laws, and industry standards.

22.     Contrary to these promises, and despite the fact that Chase and Zelle had been named as defendants in a fraud and false advertising action in 2022, and despite a prior glitch involving Zelle earlier in 2023, Defendants failed to take reasonable steps to prevent the within occurrence, which was a direct result of Defendants' failure to implement adequate and reasonable cyber procedures and protocols to prevent the registering of duplicate transactions.

23.     Defendant Chase did not reveal to Plaintiff and Class Members that it had an incentive to encourage its online banking customers to use Zelle, in that, as part owners of defendant Zelle, it would save money on transaction fees that would have been paid to other money transfer networks.

24.     Defendants have failed to safeguard the funds of Plaintiff and Class Members, failed to  avoid posting of duplicate transactions, and failed to employ measures consistent with

industry standards for the protection of the funds of Plaintiff and Class Members.

25.     This incident was foreseeable, in light of the fact that Chase and Zelle had been named as defendants in a fraud and false advertising action in 2022, and despite a prior glitch involving Zelle earlier in 2023.

26.     Accordingly, Defendant knew, or should have known, given the prior occurrences, that the current incident was likely to recur. Defendants' failure to heed these past experiences and to otherwise maintain computer practices resulted in this incident.

27.     Defendants, at all relevant times, had a duty to Plaintiff and Class Members to safeguard their funds, insure the availability of their funds, to guard against inaccurate entries in their accounts, to employ industry standard methods, train their employees, utilize available technology to defend their systems against inaccuracies, act reasonably to prevent foreseeable harm to Plaintiff and Class Members, and promptly notify the Plaintiffs and Class Members of such errors, to promptly correct and reverse duplicate or other erroneous transactions and associated fees, and to restore said funds to Plaintiff and Class Members.

28.     Defendants' duties as listed above arose as a result of the special relationship that existed between Defendants, on the one hand, and Plaintiff and the Class Members, on the other hand. The special relationship arose because Plaintiff and the Members of the Class entrusted Defendants with their funds by virtue of being depositors at Defendant Chase and users of the services of Defendant Zelle, and by virtue of Federal, State and local statutes and regulations. Defendant had the resources necessary to prevent the incident but neglected to adequately invest in cybertechnology, despite their obligation to protect such funds. Accordingly, Defendants breached their common law, statutory, and other duties owed to Plaintiff and Class Members.

29.     Defendants' duties also arose under the Electronic Fund Transfer Act (15 U.S.C.

§1693 *et seq.*), including, but not limited to, §§205.10, 205.11, and 205.14.

30.     Defendants' duties also arose under the New York State General Business Law and New York State Banking Law.

31.     Defendants failed to maintain reasonable computer and banking procedures and practices.

32.     Accordingly, Defendants did not comply with state and federal statutory and regulatory requirements and industry standards, as discussed above.

33.     Defendants were at all times fully aware of their obligations to protect the funds and credit Plaintiff and Class Members. Defendants were also aware of the significant consequences that would result from its failure to do so.

34.     As a result of the duplicate transaction incident, and as a direct and proximate result of Defendant's wrongful actions and inaction, Plaintiffs and Class Members have suffered injury and damages, including the loss of funds; loss of use of their funds; loss of interest on their monies wrongfully taken, duplicate transaction fees; overdrafts; overdraft fees; increased interest payments; inability to pay ongoing expenses; bounced checks, adverse impact to credit scores; inability to obtain various loans, such as automobile and mortgage; the stress and anxiety associated with unauthorized charges to their accounts, and the time and expense necessary to mitigate, remediate, and rectify their accounts.

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action and seek to certify and maintain it as a class action under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and/or (c)(4), on behalf of themselves, and the following proposed Classes (collectively, the "Class").

36.     The Nationwide Class is defined as follows: All individuals residing in the United

States who were affected by the duplicate transaction incident of June 2, 2023.

37.     The New York Class is defined as follows: All individuals residing in New York who were affected by the duplicate transaction incident of June 2, 2023.

38.     Excluded from each of the above proposed Classes are: Defendants, any entity in which Defendants have a controlling interest, are a parent or subsidiary, or which is controlled by Defendants, as well as the officers, directors, affiliates, legal representatives, heirs, predecessors, successors, and assigns of Defendants; and judicial officers to whom this case is assigned and their immediate family members.

39.     Plaintiff reserves the right to re-define the Class definitions after conducting discovery.

40.     Each of the proposed Classes meets the criteria for certification under Rule 23(a), (b)(2), (b)(3) and/or (c)(4).

41.     Numerosity. Fed. R. Civ. P. 23(a)(1). Pursuant to Rule 23(a)(1), the members of the Class are so numerous and geographically dispersed that the joinder of all members is impractical. While the exact number of Class members is unknown to Plaintiff at this time, the proposed Class includes potentially millions of individuals who were affected by the duplicate transaction incident of June 2, 2023.se PII and other data was compromised in the Data Breach. Class members may be identified through objective means, including by and through Defendants' business records. Class members may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. mail, electronic mail, internet postings, and/or published notice.

42.     Commonality. Fed. R. Civ. P. 23(a)(2) and (b)(3). Pursuant to Rule 23(a)(2) and with 23(b)(3)'s predominance requirement, this action involves common questions of law and fact

that predominate over any questions affecting individual Class Members. The common questions include:

(a)     Whether Defendants had a legal duty to implement and maintain reasonable computer methodology and procedures and practices for the protection of Class Members' funds;

(b)     Whether Defendants breached their legal duty to implement and maintain reasonable computer methodology and procedures and practices for the protection of Class Members' funds;

(c)     Whether Defendants' conduct, practices, actions, and omissions, resulted in or were the proximate cause of the duplicate transaction incident of June 2, 2023, resulting in the damages as aforesaid to Plaintiffs and Class Members;

(d)     Whether Defendants had a legal duty to provide timely and accurate resolution of and restitution for the duplicate transaction incident of June 2, 2023 to Plaintiffs and Class members;

(e)     Whether Defendants breached its duty to provide timely and accurate resolution of and restitution for the duplicate transaction incident of June 2, 2023 to Plaintiffs and Class members;

(f)     Whether and when Defendants knew or should have known that their computer systems were vulnerable to duplicate transaction errors;

(g)     Whether Defendants failed to implement and maintain reasonable computer methodology and procedures and practices for the protection of Class Members' funds;

(h)     Whether Defendants breached express or implied contracts with the Plaintiff and the Class in failing to keep the funds of Plaintiff and Class Members safe and secure,

despite promising to do so;

(i)     Whether Defendants' conduct was negligent;

(j)     Whether Defendants' conduct was *per se* negligent;

(k)     Whether Defendants' practices, actions, and omissions constitute unfair or deceptive business practices;

(l)     Whether Plaintiff and Class Members suffered legally cognizable damages as a result of Defendants' conduct, as delineated above; and

(m)     Whether Plaintiff and Class Members are entitled to relief, including damages and equitable relief.

43.     Typicality. Fed. R. Civ. P. 23(a)(3). Pursuant to Rule 23(a)(3), Plaintiff's claims are typical of the claims of the Members of the Class. Plaintiff, as all Members of the Class, was injured through Defendants' uniform misconduct described above and asserts similar claims for relief. The same events and conduct that give rise to Plaintiff's claims also give rise to the claims of every other Class Member because Plaintiff and each Class Member are persons that have suffered harm as a direct result of the same conduct engaged in by Defendants and resulting in the duplicate  transaction incident of June 2, 2023.

44.     Adequacy of Representation (Fed. R. Civ. P. 23(a)(4). Pursuant to Rule 23(a)(4), Plaintiff and her counsel will fairly and adequately represent the interests of the Class Members. Plaintiff has no interest antagonistic to, or in conflict with, the interests of the Class Members. Plaintiff's attorneys are highly experienced in the prosecution of consumer class actions.

45.     Superiority (Fed. R. Civ. P. 23(b)(3). Pursuant to Rule 23(b)(3), a class action is superior to individual adjudications of this controversy. Litigation is not economically feasible for individual Members of the Class because the amount of monetary relief available to individual

Plaintiffs is insufficient in the absence of the class action procedure. Separate litigation could yield inconsistent or contradictory judgments and increase the delay and expense to all parties and the court system. A class action presents fewer management difficulties and provides the benefits of a single adjudication, economy of scale, and comprehensive supervision by a single court.

46.     Risk of Inconsistent or Dispositive Adjudications and the Appropriateness of Final Injunctive or Declaratory Relief (Fed. R. Civ. P. 23(b)(1) and (2)). In the alternative, this action may properly be maintained as a class action, because:

(a)     The prosecution of separate actions by individual Members of the Class would create a risk of inconsistent or varying adjudication with respect to individual Members of the Class, which would establish incompatible standards of conduct for Defendants; or

(b)     The prosecution of separate actions by individual Members of the Class would create a risk of adjudications with respect to individual Members of the Class which would, as a practical matter, be dispositive of the interests of other Members of the Class not parties to the adjudications, or substantially impair or impede their ability to protect their interests; or

(c)     Defendants have acted or refused to act on grounds generally applicable to the Class, thereby making appropriate final injunctive or corresponding declaratory relief with respect to the Class as a whole.

47.     Issue Certification (Fed. R. Civ. P. 23(c)(4). In the alternative, the common questions of fact and law, set forth above, are appropriate for issue certification on behalf of the proposed Class.

## FIRST CAUSE OF ACTION FOR NEGLIGENCE
### (on behalf of Plaintiff, the Nationwide Class and the New York Class)

48.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in

the preceding paragraphs above as if set forth in full herein.

49. Defendants required Plaintiff and Class Members to entrust their funds to them in order to use their online banking services.

50. Defendants have, and continue to have, a duty to Plaintiff and Class Members to exercise reasonable care in safeguarding and protecting their funds. Defendants also have, and continue to have, a duty to use ordinary care in activities from which harm might be reasonably anticipated, such as in the transfer of funds via their online banking system.

51. Defendants' duty to use reasonable security measures arose as a result of the special relationship that existed between Defendants and its depositors. The special relationship arose because Plaintiff and the Members of the Class had entrusted Defendant with their funds by virtue of being depositors and users of Defendants' online banking services. Only Defendants were in a position to ensure that its systems were sufficient to protect against the harm to Plaintiff and the Class Members from a duplicate transfer incident.

52. Defendants violated these standards and duties by failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' funds by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate computer processes, controls, policies, procedures, protocols, and software and hardware systems to safeguard and protect the funds of Plaintiff and Class Members. PII and other data as aforesaid. It was reasonably foreseeable to Defendants that their failure to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' funds by failing to design, adopt, implement, control, direct, oversee, manage, monitor, and audit appropriate computer processes, controls, policies, procedures, protocols, and software and hardware systems would result in the duplicate transaction incident.

53.     Defendants, by and through their negligent actions, inaction, omissions, and want of ordinary care, unlawfully breached its duties to Plaintiff and Class Members by, *inter alia*, failing to exercise reasonable care in safeguarding and protecting Plaintiff's and Class Members' funds within their possession, custody and control.

54.     Defendants, by and through their negligent actions, inactions, omissions, and want of ordinary care, further breached its duties to Plaintiff and Class Members by failing to design, adopt, implement, control, direct, oversee, manage, monitor and audit their processes, controls, policies, procedures, protocols, and software and hardware systems for complying with the applicable laws and safeguarding and protecting Plaintiff's and Class Members' funds.

55.     But for Defendants' negligent breach of the above-described duties owed to Plaintiff and Class Members, their funds would not have been subject to the duplicate transaction incident.

56.     As a direct and proximate result of Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused the duplicate transaction incident, Plaintiff and Class Members have suffered, and will continue to suffer, loss of funds; loss of use of their funds; duplicate transaction fees; overdrafts; overdraft fees; increased interest payments; inability to pay ongoing expenses; adverse impact to credit scores; inability to obtain various loans, such as automobile and mortgage; the stress and anxiety associated with unauthorized charges to their accounts, and the time and expense necessary to mitigate, remediate, and rectify their accounts.

57.     Defendants' above-described wrongful actions, inaction, omissions, and want of ordinary care that directly and proximately caused this duplicate transaction incident constitute negligence.

## SECOND CAUSE OF ACTION FOR NEGLIGENCE *PER SE*
### (on behalf of Plaintiff, the Nationwide Class and the New York Class)

58.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs above as if set forth in full herein.

59.     Pursuant to the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, including §205.10, Defendants had a duty to allow only authorized electronic transfers to be from Plaintiff's and Class members' accounts.

60.     The duplicate transfers made from the accounts of Plaintiff and Class members during the duplicate transfer incident were not so authorized.

61.     Pursuant to the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, including §205.11, errors are to be resolved promptly.

62.     The erroneous transfers made during the duplicate transfer incident were not resolve promptly.

63.     Defendant Zelle violated its responsibilities as a service provider under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, including §205.14.

64.     Defendant Chase violated its responsibilities with respect to its service provider, defendant Zelle, under the Electronic Funds Transfer Act ("EFTA"), 15 U.S.C. § 1693 *et seq.*, including §205.14.

65.     Defendants violated the EFTA by failing to use reasonable measures to protect the funds of Plaintiff and Class Members and by not complying with applicable industry standards, as described herein.

66.     Plaintiff and Class Members are within the class of persons that the EFTA was intended to protect.

67.     The harm that occurred as a result of the duplicate transfer incident is the type of

harm the EFTA was intended to guard against.

68.     As a direct and proximate result of Defendants' negligence *per se*, Plaintiff and Class Members have suffered, and continue to suffer, injuries, damages arising from duplicate transfer incident, including  loss of funds; loss of use of their funds; duplicate transaction fees; overdrafts; overdraft fees; increased interest payments; inability to pay ongoing expenses; adverse impact to credit scores; inability to obtain various loans, such as automobile and mortgage; the stress and anxiety associated with unauthorized charges to their accounts, and the time and expense necessary to mitigate, remediate, and rectify their accounts.

69.     Defendants' violation of the EFTA constitutes negligence *per se*.

70.     For the same reasons and upon the same bases, Defendants, violation of New York GBL §349 and various other State and local statutes, constitutes negligence *per se*.

## THIRD CAUSE OF ACTION FOR BREACH OF CONTRACT
### (on behalf of Plaintiff, the Nationwide Class and the New York Class)

71.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs above as if set forth in full herein.

72.     Plaintiff and Class Members entered into various contractual agreements with Defendants, including deposit agreements and electronic transfer agreements.

73.     There was offer, acceptance and consideration, the consideration being the depositing and entrusting of funds with Defendants services, including the provisions of those agreements pertaining to the protection of students' and former students' PII and other data.

74.     The Plaintiff and Class Members have performed and satisfied all of their obligations to Defendants pursuant to their contracts.

75.     Defendants breached their contractual obligations to protect Plaintiff's and Class

Members' funds that were entrusted to it by permitting duplicate, unauthorized transfers.

76.      As a direct and proximate result of Defendants' breach of contract, Plaintiff and Class Members have suffered, and continue to suffer, injuries, damages arising from the duplicate transfer incident, including loss of funds; loss of use of their funds; duplicate transaction fees; overdrafts; overdraft fees; increased interest payments; inability to pay ongoing expenses; adverse impact to credit scores; inability to obtain various loans, such as automobile and mortgage; the stress and anxiety associated with unauthorized charges to their accounts, and the time and expense necessary to mitigate, remediate, and rectify their accounts.

77.      The above constitutes breach of contract by Defendants.

## FOURTH CAUSE OF ACTION FOR BREACH OF IMPLIED CONTRACT
### (on behalf of Plaintiff, the Nationwide Class and the New York Class)

78.      The Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs above as if set forth in full herein.

79.      Defendants accepted funds belonging to Plaintiff and Class Members to fulfill its deposit and electronic transfer agreements.

80.      By virtue of the above, Defendants entered into implied contracts with Plaintiff and Class Members by which Defendant agreed to safeguard and protect such funds.

81.      Plaintiff and Class Members fully performed their obligations under the implied contracts with Defendants.

82.      Defendants breached the implied contracts it made with Plaintiff and Class Members by failing to safeguard and protect Plaintiff's and Class Members' funds and by allowing unauthorized duplicate transfers.

83.      As a direct and proximate result of Defendants' breach of implied contract, Plaintiff

and Class Members have suffered, and continue to suffer, injuries, damages arising from the duplicate transfer incident, including loss of funds; loss of use of their funds; duplicate transaction fees; overdrafts; overdraft fees; increased interest payments; inability to pay ongoing expenses; adverse impact to credit scores; inability to obtain various loans, such as automobile and mortgage; the stress and anxiety associated with unauthorized charges to their accounts, and the time and expense necessary to mitigate, remediate, and rectify their accounts.

84.     The above constitutes breach of implied contract by Defendants.

**FIFTH CAUSE OF ACTION FOR MISREPRESENTATION**
**(on behalf of Plaintiff, the Nationwide Class and the New York Class)**

85.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs above as if set forth in full herein.

86.     A special, privity-like relationship existed between Defendants and Plaintiff and Class Members herein because Plaintiff and the Members of the Class entrusted Defendants with their funds and by virtue of Federal, State and local statutes and regulations.

87.     The Defendants incorrectly represented to Plaintiff and Class Members that their funds would be safe and secure with Defendants and that Defendants would take appropriate measures to safeguard their funds.

88.     Plaintiff and Class Members reasonably relied upon said representations in that they held Defendants in a position of trust as guardians of their funds.

89.     As a direct and proximate result of Defendant's misrepresentation, Plaintiff and Class Members have suffered, and continue to suffer, injuries, damages arising from the duplicate transfer incident, including loss of funds; loss of use of their funds; duplicate transaction fees; overdrafts; overdraft fees; increased interest payments; inability to pay ongoing expenses; adverse impact to credit scores; inability to obtain various loans, such as automobile and mortgage; the

stress and anxiety associated with unauthorized charges to their accounts, and the time and expense necessary to mitigate, remediate, and rectify their accounts.

90. The above constitutes misrepresentation on the part of Defendant.

### SIXTH CAUSE OF ACTION FOR BREACH OF FIDUCIARY DUTY
**(on behalf of Plaintiff, the Nationwide Class and the New York Class)**

91. The Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs above as if set forth in full herein.

92. A fiduciary relationship existed between Plaintiff and Class Members and Defendants, in that Defendants were in a position of trust with respect to Plaintiff and Class Members by virtue of the funds entrusted to them by Plaintiff and Class Members.

93. Defendants owed a duty of utmost care to Plaintiff and Class Members to ensure that the funds entrusted to them were safeguarded pursuant to common law and statute.

94. The Defendants engaged in misconduct, consisting of the failure to safeguard the funds of Plaintiff and Class Members that had been entrusted to them, in violation of the duty to exercise due care, their contractual obligations and their statutory obligations pursuant to the EFTA, New York GBL §349, New York Banking Law, and various other State and local statutes.

95. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiffs and Class Members have suffered, and continue to suffer, injuries, damages arising from the duplicate transfer incident, including loss of funds; loss of use of their funds; duplicate transaction fees; overdrafts; overdraft fees; increased interest payments; inability to pay ongoing expenses; adverse impact to credit scores; inability to obtain various loans, such as automobile and mortgage; the stress and anxiety associated with unauthorized charges to their accounts, and the time and expense necessary to mitigate, remediate, and rectify their accounts.

96. The above constitutes breach of fiduciary duty on the part of Defendants.

**SEVENTH CAUSE OF ACTION FOR VIOLATION OF NEW YORK GENERAL
BUSINESS LAW §349
(on behalf of Plaintiff and the New York Class)**

97.     The Plaintiff repeats, reiterates and realleges each and every allegation set forth in the preceding paragraphs above as if set forth in full herein.

98.     Defendants engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce and furnishing of services, in violation of N.Y. Gen. Bus. Law § 349(a), including but not limited to the following:

(a)     Defendant misrepresented material facts to Plaintiff and Class Members by representing that they would maintain adequate security practices and procedures to safeguard Plaintiff's and New York Class Members' funds;

(b)     Defendants misrepresented material facts to Plaintiff and New York Class Members by representing that they did and would comply with the requirements of federal and state laws pertaining to the security of Plaintiff's and New York Class Members' funds;

(c)     Defendants omitted, suppressed, and concealed material facts as to the inadequacy of its security protections for Plaintiff's and New York Class Members' funds;

(d)     Defendants engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the security of Plaintiff's and New York Class Members' funds, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the duplicate transfer incident. These unfair acts and practices violated duties imposed by laws including the EFTA and New York Banking Law;

(e)     Defendants engaged in deceptive, unfair, and unlawful trade acts or practices by failing to timely resolve the duplicate transfer incident.

99.     Defendants' failure constitutes false and misleading representations, which have

the capacity, tendency, and effect of deceiving or misleading consumers (including Plaintiff and New York Class Members) regarding the security of their banking network.

100.    The misrepresentations upon which consumers (including Plaintiff and New York Class Members) relied upon were material misrepresentations (*e.g.*, as to Defendants' adequate protection of funds), and consumers (including Plaintiff and New York Class Members) relied on those representations to their detriment.

101.    Defendants' conduct is unconscionable, deceptive, and unfair, as it is likely to, and did, mislead consumers acting reasonably under the circumstances.

102.    As a direct and proximate result of Defendants' conduct, Plaintiff and New York Class Members have been harmed, in that they were subjected to the duplicate transfer incident, which resulted in damages as aforesaid.

103.    As a direct and proximate result of Defendants' violation of NY GBL §349, Plaintiff and New York Class Members have suffered, and continue to suffer, injuries and damages arising from the duplicate transfer incident, including loss of funds; loss of use of their funds; duplicate transaction fees; overdrafts; overdraft fees; increased interest payments; inability to pay ongoing expenses; adverse impact to credit scores; inability to obtain various loans, such as automobile and mortgage; the stress and anxiety associated with unauthorized charges to their accounts, and the time and expense necessary to mitigate, remediate, and rectify their accounts.

104.    Plaintiff and New York Class Members seek all monetary and non-monetary relief allowed by law, injunctive relief, and reasonable attorneys' fees and costs.

105.    The above constitutes violation of NY GBL §349.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the members of the Classes defined above, respectfully requests that this Court:

A.    Certify this case as a class action under Federal Rule of Civil Procedure 23, appoint Plaintiff as the Class representative, and appoint the undersigned as Class counsel;

B.    Order appropriate relief to Plaintiff and the Classes;

C.    Enter injunctive and declaratory relief as appropriate under the applicable law;

D.    Award Plaintiff and the Classes pre-judgment and/or post-judgment interest as prescribed by law;

E.    Award reasonable attorneys' fees and costs as permitted by law; and

F.    Enter such other and further relief as may be just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury of all claims so triable.

Dated: Brooklyn, New York
       June 8, 2023

Respectfully submitted,

HELD & HINES, L.L.P.
*Attorneys for Plaintiffs and the Putative Class*

*/s/ Philip M. Hines*
_____
By: Philip M. Hines
2004 Ralph Avenue
Brooklyn, New York 11234
(718) 531-9700
phines@heldhines.com